No. 23-30445

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

STATE OF MISSOURI; STATE OF LOUISIANA; AARON KHERIATY; MARTIN KULLDORFF; JIM HOFT; JAYANTA BHATTACHARYA; JILL HINES,

Plaintiffs-Appellees,

v.

JOSEPH R. BIDEN, JR.; VIVEK H. MURTHY; XAVIER BECERRA; DEPARTMENT OF HEALTH & HUMAN SERVICES; ANTHONY FAUCI, et al.,

Defendants-Appellants.

On Appeal from the United States District Court
for the Western District of Louisiana

## RESPONSE TO PLAINTIFFS' PETITION FOR REHEARING

BRIAN M. BOYNTON
  *Principal Deputy Assistant Attorney General*

BRANDON BONAPARTE BROWN
  *United States Attorney*

DANIEL TENNY
DANIEL WINIK
SIMON C. BREWER
  *Attorneys, Appellate Staff*
  *Civil Division, Room 7245*
  *U.S. Department of Justice*
  *950 Pennsylvania Avenue NW*
  *Washington, DC 20530*
  *(202) 305-8849*

This Court properly held that the plaintiffs were not likely to succeed on their claims against the Cybersecurity and Infrastructure Security Agency (CISA) and State Department defendants, and properly vacated the injunction against them. Plaintiffs' rehearing petition provides no basis for disturbing those holdings. Plaintiffs identify no conduct by those agencies that this Court overlooked. They attempt to conflate CISA with the FBI, ignoring the inapplicability to CISA of the grounds on which the Court ruled with regard to the FBI. And they improperly seek to attribute to CISA and the State Department the conduct of a private organization, without demonstrating either that the private organization should be subject to constitutional constraints or that it would have violated such constraints even if they were applicable. All the while, plaintiffs present an inaccurate description of the factual record, ignoring unrebutted evidence and failing to substantiate their factual assertions. In short, this Court did not overlook or misapprehend any relevant facts in vacating the injunction as to the CISA and State Department defendants or in vacating a provision of the injunction targeted at particular private organizations. The petition for rehearing should be denied.

**I.    The CISA Defendants Cannot Be Enjoined On The Theory That CISA Participated In Meetings With The FBI**

This Court correctly held that the record provided neither any "indication" that "CISA had power over the platforms in any capacity," nor any indication that CISA issued any requests that "were threatening in tone or manner," nor any indication that CISA exercised "meaningful control" over the platforms. Op. 60. And the Court

identified "no plain evidence that content was actually moderated per CISA's requests or that any such moderation was done subject to non-independent standards." *Id.* Plaintiffs' petition does not fill any of these gaps. Plaintiffs do not identify any threatening or coercive act by CISA or any specific conduct that demonstrates that CISA exercised control over the platforms.

Unable to identify any act or omission by CISA that would violate the Constitution, plaintiffs urge the Court to reinstate the injunction against CISA merely on the ground that CISA cooperated in a general manner with the FBI. No doctrine justifies the attribution of one entity's conduct to another on that ground.

Nor do plaintiffs identify any basis on which the asserted cooperation between CISA and the FBI—namely, the fact that they both attended certain meetings with platforms—would cause CISA to have violated the First Amendment. This Court held that regular meetings, and indeed a "working relationship" between platforms and agencies, were "not problematic from a First Amendment perspective." Op. 43. The Court held that the FBI's actions during the meetings in question (among others) were coercive because the FBI, as the Nation's lead law-enforcement agency, had "clear authority over the platforms," Op. 54, and, in particular, because "the FBI—unlike most federal actors—also has tools at its disposal to force a platform to take down content," Op. 55. The government disagrees with this Court's assessment of these considerations, but even on their own terms they do not justify a conclusion that CISA's actions were

coercive. Plaintiffs do not establish that CISA could exercise authority over platforms or force them to take down content.

Nor do plaintiffs identify any basis, *apart* from CISA's alleged general "cooperation" with the FBI, on which CISA would have violated the First Amendment through its participation in the meetings in question. Far from providing any evidence that CISA made any request backed by an explicit or implicit threat of sanctions, or that CISA somehow exercised control over the platforms, plaintiffs simply assert based on CISA's involvement in the meetings that "CISA *evidently* coordinated with the FBI" to bring about the changes in content-moderation policies and practices that this Court has held were the result of the FBI's actions during those meetings. Pet. 4 (emphasis added). That speculation does not provide any evidence that CISA coerced or significantly encouraged anyone.

Plaintiffs also entirely fail to account for unrebutted record evidence that "CISA has not participated in the USG – Industry meetings since the 2022 general election." ROA.19699; *see also* ROA.13234 (no "plan to have these meetings continue in 2023"). That is presumably why this Court used the past tense when it referred to CISA's communications with social-media platforms (Op. 13-14, 60). And it is why CISA could not lawfully be subjected to a preliminary injunction on the basis of the (now-terminated) USG-Industry meetings even if its past participation in those meetings could support a conclusion that it violated the Constitution. *See, e.g.*, *O'Shea v. Littleton*, 414

U.S. 488, 495-496 (1974) (jurisdiction); *Google, Inc. v. Hood*, 822 F.3d 212, 228 (5th Cir. 2016) (irreparable injury).

There is accordingly no basis for plaintiffs to suggest that the Court "overlooked or misapprehended" any "point of law or fact," Fed. R. App. P. 40(a)(2), in vacating the district court's injunction as to CISA. The rationale on which the Court determined that it was proper to enjoin the FBI simply does not apply to CISA, and the injunction against the FBI cannot lawfully be extended to CISA on the theory that "CISA closely cooperated with the FBI" (Pet. 2).[1]

## II. Neither CISA Nor The State Department Can Be Enjoined Based On Their Interactions With The Election Integrity Partnership

Plaintiffs make a series of unwarranted logical leaps to argue (Pet. 5-16) that CISA and the State Department could be enjoined based on their supposed "entanglement" with the Election Integrity Partnership (EIP). The government respectfully disagrees with this Court's legal analysis of the type of "entanglement" that can lead to "significant encouragement," but even accepting that analysis for present purposes, this Court properly found no such entanglement here.

The EIP is a private partnership formed by various private organizations in 2020. ROA.19696. As the Court observed, the EIP is a private organization that possesses its own First Amendment rights to speak about misinformation, including by flagging

---

[1] Plaintiffs properly do not suggest that the injunction should be upheld as to the entire Department of Homeland Security.

content for social-media platforms. Op. 14, 69. Any actions by the EIP thus provide no basis for reconsidering the Court's holding that "the district court erred in finding that … CISA Officials[] and State Department Officials likely violated Plaintiffs' First Amendment rights." Op. 72.

1.  Plaintiffs offer a roundabout theory that the EIP coerced platforms into changing their content-moderation policies and decisions and that the EIP is in fact a CISA entity. Plaintiffs are wrong on both counts.

a.  Plaintiffs devote considerable effort to demonstrating that CISA coordinated with the EIP in its switchboarding effort. But this Court already recognized that "CISA officials worked alongside" the EIP when engaging in such efforts. Op. 14. The Court simply held that such actions "fall[] on the 'attempts to convince,' not 'attempts to coerce,' side of the line." Op. 60. Nothing in the petition provides any basis for overturning that holding; plaintiffs identify no evidence whatsoever that this Court misapprehended any aspect of the switchboarding efforts. Highlighting the unreasonable breadth of their position, plaintiffs complain (Pet. 9) about an organization "through which state and local officials report ostensible 'misinformation' to the EIP and CISA for flagging to platforms for censorship," ignoring that officials from plaintiffs Missouri and Louisiana themselves participated in those efforts (ROA.23217-23227).

Even if plaintiffs had shown that the EIP's actions were attributable to CISA, moreover, they have not shown that the EIP did anything more than advocate for the adoption and enforcement of different content-moderation policies. Pet. 11-14.

Plaintiffs' petition does not suggest, let alone demonstrate, that the EIP (with or without CISA's involvement) "had power over the platforms in any capacity"; that it made requests that "were threatening in tone or manner"; or that it exercised any other form of advocacy that "equate[d] to meaningful control," Op. 60.

Plaintiffs assert that, "acting in concert with CISA, the EIP '*successfully pushed social-media platforms to adopt more restrictive policies about election related speech in 2020.*'" Pet. 10-11 (plaintiffs' emphasis) (quoting ROA.26534). Plaintiffs' citation is to the district court's opinion, which did not say that the EIP's efforts in this regard were in concert with CISA, much less that they constituted the improper use of government authority rather than permissible persuasion. In short, plaintiffs have identified no evidence overlooked by this Court that CISA, through the EIP, exercised inappropriate control over social-media platforms' policies.

b.  Plaintiffs' extraordinary claim that this Court was wrong to characterize the EIP as a "private organization[]," Op. 14, is premised on their view that "CISA launched the EIP and works in close cooperation with it," Pet. 8. But plaintiffs cite no authority for the proposition that, even if this characterization were accurate, it would render the EIP anything other than a private organization. The Supreme Court has rejected such broad theories of state action. *See Manhattan Cmty. Access Corp. v. Halleck*, 139 S. Ct. 1921, 1931-1932 (2019).

Plaintiffs' evidence that CISA "launched the EIP" is that "'CISA interns came up with the idea.'" Pet. 8. The record reflects that Stanford University students who

- 6 -

had internships at CISA made a presentation to the Stanford Internet Observatory regarding challenges facing election officials, and the Stanford Internet Observatory later created the EIP. ROA.19697. But any work those students performed in the creation or support of the EIP was not by or for CISA. ROA.19697. Even assuming their account of the EIP's creation is accurate, plaintiffs cite no authority for the proposition that any brainchild of an intern for the federal government is a federal entity.

Plaintiffs also cite federal funding (Pet. 9), ignoring unrebutted evidence (ROA.19696-19697) that CISA does not fund the EIP and does not fund disinformation-related activities of a separate private entity, the Center for Internet Security, that plaintiffs describe (Pet. 9) as "coordinat[ing] with the EIP in flagging misinformation." The EIP's only federal funding is through a non-defendant, the National Science Foundation, as the district court acknowledged. ROA.26534. And federal funding is in any event not sufficient to demonstrate that a private entity is a state actor. *See Halleck*, 139 S. Ct. at 1932.

Plaintiffs' suggestion that CISA and the EIP shared leadership appears to be premised on the fact that two EIP leaders served on a CISA advisory committee or subcommittee (alongside many other private-sector individuals), and a third EIP leader had been identified as a possible subject-matter expert who could brief a CISA advisory committee. ROA.13563; ROA.19828; ROA.19838. But the whole point of advisory committees established under the Federal Advisory Committee Act (FACA) is to regularize the process by which the federal government obtains advice from groups of

*private individuals. See, e.g., Public Citizen v. U.S. Dep't of Justice*, 491 U.S. 440, 446 (1989) (discussing FACA). Indeed, FACA's scope excludes any "committee that is composed wholly of full-time, or permanent part-time, officers or employees of the Federal Government." 5 U.S.C. § 1001(2)(B)(i). Thus, no authority supports the proposition that any private entity whose leaders serve on federal advisory committees or provide expertise to federal agencies ceases to be a private organization. Plaintiffs suggest (Pet. 10) that the EIP "extensively briefed CISA on its activities," but even accepting their characterization of several short meetings, the existence of such communications merely demonstrates that "CISA has engaged with the EIP as it does with other non-governmental organizations in the election community," ROA.19698. In short, plaintiffs have adduced no evidence casting doubt on the EIP's status as a purely private organization. Op. 14, 69.

2. Plaintiffs' cursory argument as to the State Department identifies no basis for this Court to reconsider its holding. Plaintiffs do not contend that the Court erred in observing that Department officials "[g]enerally … did not flag content, suggest policy changes, or reciprocally receive data during … meetings" with social-media platforms. Op. 14; *see* Pet. 14-15. Instead, plaintiffs assert that the State Department flagged certain content for the EIP on approximately 21 occasions and that the EIP, in turn, may have flagged that content for the platforms. Pet. 14-15. But this Court correctly held that it was consistent with the First Amendment for CISA, a government actor, to pass along *directly* to platforms reports of content that potentially violated the

platforms' content-moderation policies. It thus plainly cannot be impermissible for the State Department to do the same thing with the EIP as an intermediary; plaintiffs do not identify any facts refuting evidence that the EIP—and then, in turn, the platforms—made independent decisions about what action, if any, to take with respect to the content flagged by the State Department. ROA.20111-20112. And as to the State Department's direct contacts with social-media platforms, plaintiffs identify no evidence that this Court overlooked in concluding that the State Department's "messages do not appear coercive in tone, did not refer to adverse consequences, and were not backed by any apparent authority." Op. 59-60.

3. Plaintiffs identify no error in this Court's modest observation that an injunction that prohibits the government from collaborating with named private entities "may implicate private, third-party actors that are not parties in this case and that may be entitled to their own First Amendment protections." Op. 69. If the Court were to accept plaintiffs' invitation to reinstate the relevant provision of the injunction, then the government would be prohibited, on penalty of contempt, from "collaborating, coordinating, partnering," or "jointly working" with private entities—who are not parties to this suit—"for the purpose of urging, encouraging, pressuring, or inducing in any manner removal, deletion, suppression, or reduction of content posted with social-media companies containing protected free speech." ROA.26613. In addition to the many other problems with that language, addressed in other parts of the Court's

opinion, the Court was correct that such a provision "may implicate" the First Amendment rights of private parties, Op. 69.

Plaintiffs are likewise wrong to suggest that a private organization could somehow forfeit its rights by declining to intervene in this litigation. Pet. 16. The fact that a third party's interests may be adversely affected by litigation may create a *right* to intervene, Fed. R. Civ. P. 24(a); it does not create an *obligation* to intervene. To the contrary, it is the parties and the district court who bear an obligation to join affected third parties in certain situations. Fed. R. Civ. P. 19(a)(1)(B). The one case on which plaintiffs rely is plainly inapposite: It involved a party's failure to raise an argument in district court that it sought to raise on appeal. *See Allied Bank-W., N.A. v. Stein*, 996 F.2d 111, 115 (5th Cir. 1993).

## CONCLUSION

For the foregoing reasons, the petition should be denied. As of this filing, the government's application for a stay of the district court's injunction remains pending before the Supreme Court. *See* No. 22A243. If the Supreme Court has not granted a stay before this Court acts on the rehearing petition, we respectfully request that this Court continue its administrative stay of the injunction until the Supreme Court acts on the pending application for a stay or on any renewed stay application filed within ten days of this Court's disposition of the petition for rehearing. We also respectfully request that this Court issue its mandate forthwith after acting on the rehearing petition,

which would avoid allowing the district court's injunction to take effect without the modifications that this Court deemed proper.

Respectfully submitted,

BRIAN M. BOYNTON
   *Principal Deputy Assistant Attorney*
     *General*

BRANDON BONAPARTE BROWN
   *United States Attorney*

DANIEL TENNY

*/s/ Daniel Winik*
DANIEL WINIK
SIMON C. BREWER
   *Attorneys, Appellate Staff*
   *Civil Division, Room 7245*
   *U.S. Department of Justice*
   *950 Pennsylvania Avenue NW*
   *Washington, DC 20530*
   *(202) 305-8849*
   *Daniel.L.Winik@usdoj.gov*

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(g), I certify that this motion has been prepared in 14-point Garamond, a proportionally spaced font, and that it complies with the type-volume limitation of Federal Rule of Appellate Procedure 40(b)(1) because it contains 2,550 words, according to Microsoft Word.

*/s/ Daniel Winik*
Daniel Winik